# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| PATCO ENERGY EXPRESS, LLC, | : | CIVIL ACTION |
| PATCO ENERGY EXPRESS II, LLC, | | |
| and PATCO ENERGY EXPRESS III, | : | |
| LLC, Georgia limited liability | | |
| companies, | : | |
| | | |
| Plaintiffs, | : | |
| | | |
| v. | : | |
| | | |
| MICHAEL G. LAMBROS, | : | No. CV209-004 |
| | | |
| Defendant. | : | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiffs Patco Energy Express, LLC, Patco Energy Express II, LLC, and Patco Energy Express III, LLC, Georgia limited liability companies ("Patco"), filed the above-captioned case against Defendant Michael G. Lambros on January 27, 2009, asserting claims under 42 U.S.C. § 1983 and for conversion.

In their complaint, Plaintiffs allege that Defendant, acting under color of state law as Receiver for Fairly Cisco ("Cisco"), acted in bad faith in seizing Plaintiffs' property without granting Plaintiffs a hearing, as Plaintiffs allege is required by the Fifth and Fourteenth Amendments to the United

States Constitution. Complaint ¶ 22. Doc. No. 1. Plaintiffs allege that Defendant is liable under § 1983 for the damages incurred by Plaintiffs as a result of Defendant's alleged constitutional violations, and that Defendant is liable for the damages incurred by Plaintiffs as a result of Defendant's illegal conversion. Id. ¶¶ 22, 24.

On February 2, 2009, Mr. Lambros, in his capacity as Receiver for Cisco, filed a motion in the Superior Court of Camden County, Georgia, seeking the Superior Court's permission to sell the property -- now claimed by Plaintiffs as belonging to them -- at auction. See Receiver's Motion to Sell Various Items of Property Located Upon Real Property of the Receivership Estate in Camden County, Georgia ¶ 21, Exhibit "B" to Plaintiffs' Motion for Emergency Hearing and Temporary Restraining Order and Preliminary Injunction (hereinafter "Receiver's Motion"). Doc. No. 11.

In response to the Receiver's motion in Camden County Superior Court, Plaintiffs in the instant case filed a motion for a temporary restraining order and a preliminary injunction on February 2, 2009. In that motion, Plaintiffs ask the Court to issue a preliminary injunction enjoining the Superior Court of Camden County from ordering that the property at issue be

sold at auction. Due to the pendency of the motion in Camden County Superior Court, Plaintiffs in the instant case requested an expedited hearing on the issue. This Court granted Plaintiffs' request for an expedited hearing and heard oral argument on February 10, 2009. After hearing oral argument, receiving evidence, hearing testimony, and considering the briefs submitted by Plaintiffs on this issue, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52(a)(2) of the Federal Rules of Civil Procedure.

FINDINGS OF FACT

1. The State of Georgia, through Stephen D. Kelley, District Attorney for the Brunswick Judicial Circuit, brought a civil action in the Superior Court of Camden County, Georgia, against Fairley Cisco, owner of various fuel stations throughout Georgia, asserting that Cisco violated the Georgia Racketeer Influenced and Corrupt Organizations Act, Georgia Code Sections 16-14-1 et seq. ("RICO"). That case is styled State of Georgia v. Cisco, No. 08V0302-SS2 (Camden Co. Sup. Ct.). See Complaint ¶

3. Doc. No. 1; Exhibit "A" to Plaintiffs' Motion. Doc. No. 11.

2. On April 8, 2008, the Camden County Superior Court granted the State of Georgia's motion for a preliminary injunction in the state RICO suit, and appointed Michael G. Lambros as Receiver for Cisco. See Exhibit "A" to Plaintiffs' Motion, at 5.

3. In the April 8 order, the Camden County Superior Court empowered Mr. Lambros, as Receiver for Cisco, to:

> Take and retain possession, custody, and control, of all assets and property . . . in which any Enjoined Defendant holds a direct or indirect interest, which power includes the power to sell, transfer, or otherwise dispose of any such asset of property . . . .

Id. The Superior Court's order also empowers Mr. Lambros to:

> In his discretion as he deems appropriate, manage, control, operate, supervise, oversee, and maintain Enjoined Defendants' business . . . with the right to possess, receive, or use income earnings, rents, and profits to commence, maintain, defend, or participate in legal proceedings to sue for, collect, receive and take into possession of, all goods,

>  chattels, rights, [and] general
>  intangible . . . .

Id. at 6.

4. The instant complaint alleges that prior to the filing of the Georgia RICO action, on or about December 27, 2006, the fuel stations at issue were sold by Cisco to Keldeep Sekhon. Complaint ¶ 4.

5. On or about March of 2008, Sekhon allegedly disappeared and a party calling itself Georgia Petro, LLC claimed to have purchased Sekhon's interest in the fuel stations prior to his disappearance. Id. ¶ 6.

6. In May of 2008, Plaintiffs were allegedly approached by representatives of Georgia Petro, LLC about taking over the operations of the fuel stations. Plaintiffs eventually agreed to operate the stations and, after Mr. Lambros was appointed Receiver, Plaintiffs eventually began operating the stations, including selling gasoline and diesel fuel. Id. ¶ 7.

7. Subsequent to Plaintiffs taking over operations of the fuel stations, Plaintiffs claim that they purchased inventory to sell at the fuel stations. Id. ¶ 8.

8. On October 30, 2008, through certified mail, counsel for

Mr. Lambros, Duncan D. Walker III, notified counsel for Plaintiffs that Mr. Lambros was on that date the owner of the fuel stations occupied by Plaintiffs -- by virtue of a conveyance of the property by the previous owners to Mr. Lambros pursuant to a Deed Under Power of Sale -- and that Plaintiffs' interest in the property had been divested. See Exhibit "C" to Plaintiffs' Motion. In that same letter, counsel for Mr. Lambros informed Plaintiffs' attorney that Plaintiffs were tenants at sufferance and that Mr. Lambros, as owner of the property, terminated any possessory rights that Plaintiffs might claim to the property. Id. The letter also informed counsel for Plaintiffs that Mr. Lambros was demanding possession of the property and that, in the event Plaintiffs did not surrender the property to Mr. Lambros, a summary dispossessory action would be initiated under Georgia law. Id.

9. In response to the October 30 letter, on November 10, 2008, counsel for Plaintiffs, through certified mail, sent counsel for Mr. Lambros a letter informing him that Plaintiffs would not turn over possession of the fuel stations without a court order directing them to do so.

-6-

See Exhibit "D" to Plaintiffs' Motion.

10. On January 5, 2009, representatives of Plaintiff companies, and their counsel, met with Mr. Lambros and his counsel in an effort to resolve the issues between them. After some negotiations, the parties determined that they would be unable to reach an agreement and the meeting was terminated. Complaint ¶ 14.

11. On January 6, 2009, counsel for Plaintiffs sent counsel for Mr. Lambros a letter informing him that, in light of the failed negotiations, Plaintiffs no longer desired to operate the fuel stations and that the properties would be handed over to Mr. Lambros at a pre-arranged time pursuant to his October 30 demand. See Exhibit "E" to Plaintiffs' Motion.

12. On January 7, 2009, counsel for Mr. Lambros informed counsel for Plaintiffs that Mr. Lambros was prepared to take possession of the fuel stations on January 12, 2009. See Exhibit "F" to Plaintiffs' Motion. In that same letter, counsel for Mr. Lambros also informed counsel for Plaintiffs that Plaintiffs were prohibited by the April 8 injunction, issued by the Camden County Superior Court, from removing any asset from the fuel stations. Id.

13. Thereafter, on January 10, 2009, Plaintiffs closed the fuel stations and turned the keys over to the Camden County District Attorney, the plaintiff in the Georgia RICO action, for delivery to Mr. Lambros. Complaint ¶ 15.

14. Sometime after the fuel stations were closed, Mr. Lambros, as Receiver for Cisco, and pursuant to the April 8 injunction issued by the Camden County Superior Court, allegedly seized the inventory located in the fuel stations that had been operated by Plaintiffs. Mr. Lambros hired security to guard the stations and ensure that nobody, including Plaintiffs, removed anything from the stations without his permission. Id. ¶ 16.

15. On January 13, 2009, counsel for Mr. Lambros sent an e-mail to counsel for Plaintiffs informing him that, despite the January 7 letter, inventory was being removed from the fuel stations. See Exhibit "G" to Plaintiffs' Motion. The e-mail went on to state that the local police had been alerted and to warn Plaintiffs that they would face criminal trespass and theft charges if they attempted to remove any more inventory from the fuel stations. Id.

16. On January 27, 2009, Plaintiffs filed the instant case in this Court, asserting that Mr. Lambros' seizure of the inventory allegedly purchased by Plaintiffs to stock the fuel stations, without a pre- or post-seizure hearing, violated the due process clauses of the Fifth and Fourteenth Amendments, and that Mr. Lambros was liable for the losses incurred by Plaintiffs as a result of this allegedly unconstitutional seizure. Complaint ¶¶ 20, 22.

17. On February 2, 2009, Mr. Lambros, as Receiver for Cisco, filed a motion with the Camden County Superior Court, seeking the Superior Court's permission to sell the inventory -- which Plaintiffs in the instant suit claim belongs to them -- at auction. See Exhibit "B" to Plaintiffs' Motion.

18. On February 6, 2009, Plaintiffs filed the instant motion with this Court, asking this Court to enjoin the Camden County Superior Court from approving any such auction in the state RICO action.

**CONCLUSIONS OF LAW**

1. Plaintiffs in this case seek a preliminary injunction

enjoining the Superior Court of Camden County, Georgia from approving a sale of the inventory at issue by Mr. Lambros. When deciding whether to issue such an injunction, the Court must be mindful that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Resources Defense Council, Inc., 129 S. Ct. 365, 375-76 (U.S. 2008). See also All Care Nursing Serv., Inc. v. Bethesda Memorial Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)("A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites."). As such, it is Plaintiffs that bear the burden of persuasion in this case.

2. Traditionally, a District Court may grant a preliminary injunction only if the movant clearly establishes the following:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction is

issued, and (4) an injunction would not disserve the public interest.

N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211, 1217 (11th Cir. 2008) (citations omitted).

3. Before the Court may issue a preliminary injunction, the plaintiff must show that irreparable harm is not merely "possible," but "likely." Winter, 129 S. Ct. at 375.

4. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." See, e.g., Deerfield Med. Ctr. v. City of Deerfield Beach, 661 F.2d 328, 338 (11th Cir. 1981).

5. It is true that the irreparable harm requirement can sometimes be established by showing that the action sought to be enjoined would cause injuries in the form of lost opportunities "which are difficult, if not impossible, to quantify." MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 142 (11th Cir. 2005).

6. In this case, Plaintiffs assert that they have established irreparable harm because the sale of the property at issue would deprive Plaintiffs of the opportunity to dispose of the property in ways more likely to bring higher prices, and that it would be impossible to theoretically place a value on that missed

opportunity. <u>See</u> Plaintiffs' Memorandum at 7. That is, Plaintiffs allege that, if the contents of the convenience store are sold at auction as contemplated by Mr. Lambros, they will fetch lower prices than if sold in a non-auction setting. The Court is willing to entertain that argument. What the Court rejects is the Plaintiffs' unsupported argument that it is impossible to quantify the price difference in goods sold at auction versus goods sold in a more leisurely manner. Such calculations are rendered and accepted in courts regularly. The Court further rejects Plaintiffs' argument that the President's proposed stimulus plans somehow make the economy uncertain to the extent that an injunction is in order.

7. Unlike in <u>MacGinnitie</u>, this case does not present the situation where Plaintiffs' harm would be impossible, or even difficult, to quantify.

8. Alternatively, Plaintiffs assert that they have established irreparable harm by alleging a violation of substantive constitutional rights. In support of this argument, Plaintiffs cite <u>Elrod v. Burns</u>, 427 U.S. 347 (1976), for the proposition that the loss of constitutional freedoms constitutes irreparable injury.

Plaintiffs' Memorandum at 6-7. This argument is, at best, an unprecedented broadening of the holding in <u>Elrod</u>. In <u>Elrod</u>, the Supreme Court held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Id.</u> at 373. Nowhere in <u>Elrod</u> did the Supreme Court hold that all alleged constitutional violations satisfy the irreparable harm requirement. In fact, the holding in <u>Elrod</u> is based upon the unique importance of the First Amendment. <u>Id.</u> Because the First Amendment is not in any way implicated in this case, <u>Elrod</u> does not control.

9. Another case cited by Plaintiffs, <u>Cate v. Oldham</u>, 707 F.2d 1176 (11th Cir. 1983), also deals specifically with First Amendment violations and, therefore, is not dispositive.

10. The Court finds no binding precedent to support Plaintiffs' proposition that irreparable harm will be presumed where any constitutional violation has been alleged. In fact, the Eleventh Circuit has foreclosed this possibility: "Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm. Our case law has not gone that far,

however." Siegel v. LePore, 234 F.3d 1163, 1177 (11th Cir. 2000).

11. The Court in Siegel went on to hold that "[t]he only areas of constitutional jurisprudence where we have said that an on-going violation may be presumed to cause irreparable injury involve the right of privacy and certain First Amendment claims establishing an imminent likelihood that pure speech will be chilled or prevented altogether." Id. Because this case, in which Plaintiffs seek to prevent the auction of certain snacks and other items at a convenience store, does not implicate either of these rights, there can be no presumption of irreparable injury.

12. Plaintiffs have failed to show that their alleged injury cannot be undone through monetary compensation and, therefore, have failed to establish irreparable injury.

13. Once a Court finds that a plaintiff has failed to establish irreparable harm, the Court need not address the other prerequisites to a preliminary injunction, see Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994). However, the Court further finds that, even had Plaintiffs been able to meet their burden of

establishing irreparable harm, a preliminary injunction would still be inappropriate because Plaintiffs have also failed to clearly establish a substantial likelihood of success on the merits of their underlying case.

14. Court-appointed receivers enjoy judicial immunity for acts within the scope of their authority. <u>See, e.g.</u>, <u>Henry v. Jefferson County Personnel Bd.</u>, 252 Fed App'x 308, 308 (11th Cir. 2007); <u>Property Management & Invest., Inc. v. Lewis</u>, 752 F.2d 599, 602 (11th Cir. 1985). Further, "[l]ike other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages . . . Accordingly, judicial immunity is not overcome by allegations of bad faith or malice . . . ." <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).

15. Plaintiffs have made no showing, at this point in the litigation, of how they will clear the hurdle of judicial immunity. Because the alleged constitutional violations committed by Mr. Lambros were apparently done in his capacity as court-appointed Receiver for Cisco, there is a substantial likelihood that Mr. Lambros would be

absolutely immune from suit. Plaintiffs have yet to show a substantial likelihood of success on the merits.

16. Because Plaintiffs have failed to establish both the irreparable injury and the substantial likelihood of success requirements, they are not entitled to the extraordinary remedy of a preliminary injunction.

17. Even if Plaintiffs had carried their burden of establishing the four requirements for a traditional preliminary injunction, they would not be entitled to the particular injunction sought in this case. This is because the extraordinary remedy they seek in this case is one which would enjoin a state court proceeding. Clinton v. Goldsmith, 526 U.S. 529, 537 (1999)(holding that such an injunction is an "extraordinary remedy" that "invests a court with a power that is essentially equitable and, as such, not generally available to provide alternatives to other, adequate remedies at law."). See also Chandler v. James, 985 F. Supp. 1068, 1071 (M.D. Ala. 1997)("The court is acutely aware of the principle of comity inherent in our federalist system of government, and the court is reluctant and hesitant to enjoin proceedings in a state court. Federal enjoinment

-16-

of state litigation is to be the exception, not the rule.").

18. Recognizing the extraordinary significance of a Federal Court enjoining a state court proceeding, Congress has enacted the "Anti-Injunction Act", 28 U.S.C. § 2283. Under that statute, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

19. In this case, Plaintiffs assert that this Court is not prevented by the Anti-Injunction Act from enjoining the Camden County Superior Court, on the ground that such an injunction is "necessary in aid" of this Court's jurisdiction over the instant case. Plaintiffs' Memorandum in Support of its Motion at 2. Doc. No. 13. Specifically, Plaintiffs assert that "Defendant's motion in [the State RICO proceeding] is clearly an attempt to deprive this court of the ability to exercise its jurisdiction in the instant case and to so interfere with that jurisdiction as to make this Court's rulings unenforceable." Id.

20. In <u>Klay v. United Healthgroup, Inc.</u>, the Eleventh Circuit held that "[A] federal court injunction of state court proceedings is necessary in aid of jurisdiction when necessary 'to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'" 376 F.3d 1092, 1103 n.15 (11th Cir. 2004) (citing <u>Wesch v. Folsom</u>, 6 F.3d 1465, 1470 (11th Cir. 1993)).

21. The Court in <u>Klay</u> went on to hold that the above rule is "limited to a state court's interference with a federal court's <u>past</u> consideration or disposition of a matter as embodied in an order or judgment, and [does] not extend to all ongoing matters." <u>Id.</u>

22. The Court in <u>Klay</u> distinguished <u>Wesch v. Folsom</u>, where it had held that enjoining a state proceeding was appropriate, noting that, in <u>Wesch</u>, "the federal court's power to enjoin the state proceeding was based on its need to protect its judgment, not to protect its ability to rule prospectively in ongoing litigation." <u>Id.</u>

23. In this case, this Court has not yet considered or disposed of any matter in an order or a judgment.

Therefore, the Court's power to enjoin the state proceedings here cannot be based on the Court's need to protect its judgment, as was the case in Wesch.

24. Instead, any injunction issued in this case would be to prospectively protect this Court's ability to rule in ongoing litigation, which was specifically foreclosed by the Eleventh Circuit in Klay.

25. In the present case, regardless of what ruling the state court makes regarding whether the auction will go forward, this Court will still retain jurisdiction over the matter filed in federal court. Federal jurisdiction over Plaintiffs' claim for money damages pursuant to Section 1983 will not disappear as a result of some state order.

26. Because Plaintiffs have failed to show that the injunction requested is expressly authorized by an Act of Congress, is necessary in aid of this Court's jurisdiction, or necessary to protect or effectuate this Court's judgments, the issuance of such an injunction would be prohibited by the Anti-Injunction Act, even had Plaintiffs established the four requirements for a traditional preliminary injunction.

**CONCLUSION**

Based upon the foregoing Findings of Fact and Conclusions of Law, Plaintiffs' motion for temporary restraining order and preliminary injunction is hereby **DENIED**. Doc. No. 11.

**SO ORDERED** this ___11th___ day of February, 2009.

_____
Judge, United States District Court
Southern District of Georgia